The opinion of the Court was delivered by
Wardlaw, J.
It is not disputed that Nathaniel Holly was one of the makers of the note novt sued on, nor that he was known to all parties in the transaction as a surety of James B. Davis. There is some dispute whether, in the original note, of which this one is a renewal, any usury was included: but notwithstanding the testimony on this point, given by the principal, James B. Davis, in depositions taken on two separate examinations, the production of Neely & Dunovant’s note on the last trial, and calculations of interest easily made, leave little room *50 for doubting, that both notes were originally free from, all taint of usury. If, however, both were tainted, or only the latter was so, or a subsequent acceptance of usury, or stipulation for it, has affected the latter; — still the plaintiffs, under our law, were entitled to recover what is yet due of the principal sum that was lent, without interest or costs, — that principal sum being the amount which was first forborne on usurious terms. Under these circumstances and the nature of the defence that was made, it is manifest that the verdict for the defendants has found that the surety is discharged by reason of indulgence that was extended to the principal. This is conceded by the learned counsel for the defendants, who has argued this case with great candor and ability. Admitting that the indulgence which will suffice to discharge a surety, must have been extended under some contract which was binding on the creditor, the counsel contends that there was, before the jury, evidence of such a contract.
The force and meaning of the evidence were matters for the consideration of the jury. To them may well have been addressed observations concerning the natural anxiety which a principal, himself released, must feel to procure the release of his sureties. Of them the plaintiffs might well enquire, when their note for a large sum was to be invalidated by a contract, what that contract was: — was it a contract to indulge for a year, in consideration of the principal’s having promised to pay, and afterwards actually paying in advance, (without ever having given a note for the same,) ten per cent on $5572 08, for one year ? — or was it a contract to extend such indulgence in consideration of the payment of such ten per cent having been made in advance, and made in part by a note for $430, given to run for a month or some short time, and paid before the expiration of the year’s indulgence ? — or was it (as has been here supposed at the bar) a contract to indulge for a year in consideration of payment, made long before the end of the year, of a note for $430, which had been given for three per cent, usurious interest on $4756 62, for three years, two that were past, and the *51 third to expire in August, 1845 — the note for $5572 08 being intended to run on and cover the lawful seven .per cent for the same three years ? This Court will not enter upon these questions of fact. It will, for present purposes, take it for granted that the jury found that, in September, 1844, after the note now sued on was due, the principal, James B. Davis, paid $430 to Eli Cornwell, some or all of which was understood between them to be usury; and that, in consideration of such payment, Eli Cornwell promised that he would not sue any of the makers, on this note, before Augusc, 1845. The instructions given to the jury were, that the promise of Eli Cornwell, in consideration of such payment, was not binding on him, so as to discharge the surety, to whom both promise and consideration were unknown : the jury, in effect, have found contrary to the instructions : it is conceded that the verdict should not stand if the instructions were right; and the case here is resolved into the question of law presented by them.
It is admitted on all sides and is clear, that a promise to indulge in consideration of the payment of any part of the principal and interest that were lawfully due, would have been nudum pactum, not binding on the creditor; and that so would have been a promise to indulge, made in consideration of a. mere promise to pay usurious interest (whether by note or by word only,) if the payment was not in fact made before the expiration of the stipulated indulgence; — for such promise to pay usury would have been void, and could not have served as a consideration to support a contract. In like manner it is adrfiit-ted, on the other hand, that a promise of forbearance, made in consideration of the advance of any part of the principal or interest not yet due, would be binding; and so would be such a promise in consideration of any lawful thing beneficial to the creditor, or detrimental to the debtor, done or undertaken by the debtor, and not embraced in his pre-existing obligation. The point in dispute is, whether a creditor is bound by his promise to indulge for a definite time, made in consideration of usury paid to him before or during the term of indulgence..
*52 This question was involved in the case of Parnell vs. Price, (3 Rich. 121,) and was incidentally adverted to in Devore vs. Mundy, (4 Strob. 15): but neither of those cases decided it, and this Court has regarded it as hitherto unsettled.
The defendants’s counsel relies on the case of Kenningham vs. Bedford, (1 B. Monroe, 325), — which case has been recognized, and, with some distinctions, supported, in Kentucky, by the cases of Pyke vs. Clark, (3 B. Monroe, 262), Scott vs. Hall, (6 B. Monroe, 285), and Duncan vs. Reed, (8 B. Monroe, 382): and has been approved and confirmed in New York by the case of Vilas vs. Jones, (10 Paige, 71); and is said to he also sustained in Tennessee, by a case in 5 Humph, which is not now within reach. All those cases were in Courts of Equity, and some of them depended upon a diversity between the Courts of Law and Equity, which does not here exist, in relation to the principles applicable to the discharge of a surety by reason of indulgence extended to his principal.
What the statutes against usury were, under which those cases were severally decided, we are not exactly informed. Our own statute is peculiar, and has, under our decisions, an effect which the statutes of other States may not have. The cases of Clark vs. Hunter, (2 Sp. 85,) Harp vs. Chandler & Neel, (1 Strob. 466,) and Caughman vs. Drafts, (1 Rich. Eq. 414,) examined in connection with our Act of 1830, establish that here the forfeiture of interest and costs has been substituted in place of the forfeitures and penalties which, before 1830, might have resulted from the making of a usurious contract, or the taking of usury: that every payment of usury is, by law, applied to the diminution, pro tanto, of the principal sum lent, so long as that principal remains undischarged, and if there should be an excess of payments after entire satisfaction of the principal and lawful interest, that excess may be recovered back; that when a security or contract, originally untainted, has become tainted by usury, it continues valid for the unpaid portion of that sum which was first forborne on usurious terms, called the principal sum; and the unlawful agreement for usury, which cuts off in *53 terest and costs, is not a substituted contract, but a distinct collateral fact which operates a forfeiture of part, but no more discharges the existing security or contract than partial payment would do. With us, then, after a debt is due, payment of usury for future forbearance, is, in effect, a payment of what the debtor previously owed, and cannot be a sufficient consideration for a promise to forbear.
Payments of usury at a high rate, repeated a few times, would entirely discharge the surety, by operating an entire discharge of the principal: such payments are, then, beneficial to the surety, and neither in themselves, nor by reason of any invalid promise or mere forbearance attending or following them, afford to him any just ground of complaint. If by false representations or artful collusion between the creditor and the principal, the surety has been misled and damnified, his discharge results from the fraud: but that is not the case we are considering. Here the discharge is claimed merely upon the ground of injury done to the rights of the surety by a contract which restrained the creditor’s recourse to the principal, and so, in fact, altered the original contract to which the surety was a party; and accordingly as the consideration ascribed to the supposed new contract may be held to be sufficient or not, will there be either forbearance upon a valid contract, which does discharge, or simply forbearance under a nugatory promise, extended without consulting the surety, which confessedly does not discharge.
A promise to pay usurious interest is not voidable but void : when it is given .for a promise to forbear, and the agreement seems to have been executed by the making of the payment which was promised on one hand, and the extension of forbearance on the other, the transaction, when brought to the view of the law, is made different from what the parties intended it to be : what they agreed should be the price of forbearance, becomes a partial payment of the debt; no consideration remains to give binding efficacy to the promise of forbearance, and the *54 forbearance is shewn to have been mere delay to sue, during all of which the creditor was under no legal restraint.
A note given wholly for usury is void, and has been held to be so, under the general issue in assumpsit, even in the hands of an innocent holder, (Gaillard vs. LeSeigneur, 1 McM. 225), as a note for a gaming consideration would have been. The money paid on such a note might, after full payment of the original debt with lawful interest, have been recovered back. The payment would then be considered unsubstantial, even if it was not applied to the original debt, as by our law it is. It must be treated according to its legal effect. The creditor who has accepted it, and in consequence made a promise, has violated the law, and the debtor who has paid may have been the innocent victim of oppression; but the penalty provided by the law is a forfeiture which falls on the creditor, involving an appropriation of what he has received in a way not expected by him, or a liability to refund, but not his subjection to the obligation of a promise which was nudum paciumi
It has been objected that the principal debtor may feel himself bound not to urge his advances of usury as payments: — we answer that, so too, he might abstain from urging as payments, sums paid for past forbearance; but whether made before or after the forbearance, payments of usury become, at the will of either principal or surety, when sued, payments pro tanto of the principal sum forborne, and so, in this respect, all are alike, and none can form a sufficient consideration for a contract. Payments of usury, whether before or after the forbearance, may never come to the knowledge of the surety, and so he may not, when sued, receive any benefit from them: in like manner a fraud, which would have discharged his obligation, may be concealed from him, or a valid defence known to him he may not be able to prove: cases must be decided according to what the parties make appear by evidence, and for things not appearing and things not existing the same rule must prevail. The very fact that the surety may claim the benefit of usurious payment, which he can shew to have been made by *55 his principal, notwithstanding the opposition of both creditor and principal, distinguishes a promise made in consideration of such a payment, from a promise to an infant, to which it has been sometimes likened. The infant’s privilege is personal: he may either avoid or confirm his own promises, although in contracts to which he is a party, neither his surety nor the other contracting party can take advantage of his infancy.
The chief obstacle to our conclusion is the supposed applicability to this case of the familiar maxims, which' forbid one to take advantage of his own wrong, and refuse the interference of the law at the instance of a party who has executed an unlawful agreement, to alter his condition. It is said that it does not lie in the mouth of a creditor, who accepted money, and, in consideration thereof, promised and extended indulgence, to say that his acceptance was unlawful, and, therefore, his promise was not binding on him. But it should be borne in mind that here the surety is setting up a contract which is to have the effect of discharging his obligation:— that both a promise and sufficient consideration must be shewn, to establish a valid contract; and that the same evidence which shews the promise, shews for the consideration the payment of usury — that is, only a partial payment of a prior indebtedness. The acceptance of the money is not held unlawful, but the corrupt agreement attending it is punished by frustrating the creditor’s hopes of unlawful gain, and subjecting him to forfeiture of part of what he would otherwise have been entitled to. In abstract morality it may be pronounced dishonest for the creditor to violate his promise made upon a consideration legally insufficient: but if the whole doctrine of nudum pac-tum should be shewn to be unworthy of commendation, it would be not less the law. If a refined equity, and not the law, should be applied to the case, it might appear that both the creditor and the principal, in the transaction which embraced the payment of money and consequent forbearance, regarded the promise of forbearance on one hand, and the implied en *56 gagement not to set up the defence of usury on the other, as both merely honorary; and that when in defeat of expectations, the surety shews the usury and claims his discharge, not because of any fraud practised on him, or injury done to his rights, but merely because of a stipulated forbearance actually extended, — abstract justice is done when the law is applied on both sides, which turns the money paid for the purchase of forbearance into a partial payment of the debt, with consequent penalties thrown upon the creditor. A payment which goes to diminish the debt is, with respect to its sufficiency to serve as the consideration of a promise, the same whether it was made professedly for the purpose of diminishing the debt, or made for some other purpose yet virtually and effectually applied to that: and forbearanee extended in fulfilment of a promise made in consequence of such a payment, in either form, is no more than, forbearance which the creditor exercised at his own discretion.
If Eli Cornwell had sued the principal the day after the payment of usurious interest, or if the surety, having then paid the sum really due on the note, had sued the principal, in neither case could the principal have claimed any- protection from the promised indulgence not yet expired. There was, then, by the promise of indulgence, no tying of the hands of the creditor, nor injury to the rights or remedies of the surety, nor variation of the contract, unless a partial payment be considered such variation.
The motion for new trial is, therefore, granted.
O’Neall, Evans, Withers and Whitner, JJ. concurred.

Motion granted.